**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **CASTRO SANCHEZ, JUAN CARLOS**,<br>*Petitioner,*<br><br>v.<br><br>**JAMISON, J.L., Warden, Federal Detention Center, Philadelphia; RIFE, JOHN E., Acting Field Officer Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, Philadelphia Field Office; MULLIN, MARKWAYNE, Secretary Department of Homeland Security; BLANCHE, TODD, Acting Attorney General; U.S. DEPARTMENT OF HOMELAND SECURITY; EXECUTIVE OFFICE OF IMMIGRATION REVIEW;**<br>*Respondents.* | **Civil No. 26-2322** |

**MEMORANDUM**

**Costello, J.**                                                                              **April 17, 2026**

Petitioner Juan Carlos Castro Sanchez is a citizen of Mexico.  He entered the United

States without inspection at an unknown time at least one year ago.  On April 9, 2026,

Immigration and Customs Enforcement ("ICE") detained Castro Sanchez under 8 U.S.C.

§ 1225(b)(2), a provision of the Immigration and Nationality Act ("INA") which generally does

not permit release on bond.  While detained at the Federal Detention Center in Philadelphia,

Pennsylvania (the "FDC"), Castro Sanchez filed a Petition for Writ of Habeas Corpus under 28

U.S.C. § 2241, arguing that his mandatory detention without bond is unlawful.  The Government

opposed the Petition.  Because § 1225 does not apply to noncitizens, like Castro Sanchez, who

have resided in the United States since entering the country, the Court will grant the Petition.

## I.    FACTUAL BACKGROUND

It is unclear when Castro Sanchez entered the United States, but it is undisputed that he has lived in the United States for at least the past year or so.[1]  *See* ECF No. 1 ¶ 17 (stating that Castro Sanchez entered the United States twenty years ago); ¶ 39 (stating that Castro Sanchez has been living in the United States since 2023); ECF No. 4 at 4 (stating that Castro Sanchez entered the United States approximately one year ago) (ECF No. 4-1 at 3).  After entering the United States, Castro Sanchez resided in Pennsylvania.  ECF No. 1 ¶¶ 1, 17.  On April 9, 2026, immigration agents stopped and detained Castro Sanchez while he was on his way to work.  *Id.* ¶ 2.  He remains detained at FDC Philadelphia.  *Id.* ¶ 6.

## II.    LEGAL STANDARD

A writ of habeas corpus is available "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A district court may grant a writ of habeas corpus if a petitioner is detained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  This includes a noncitizen's challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citation and quotations omitted)).

---

[1]    The exact date of entry is not material to the Court's analysis.  The parties agree on the facts necessary to resolve the Petition, namely, that Castro Sanchez was already present in the United States for some time when he was detained by ICE.  Therefore, the Court will decide this matter on the pleadings and without a hearing.

**III.     LEGAL BACKGROUND**

**A.     INA Detention Provisions**

At issue in this matter are two provisions of the INA that permit detention of noncitizens during immigration removal proceedings.  Section 1226 of the INA provides that the Attorney General may arrest and detain noncitizens subject to a few statutory exceptions.  8 U.S.C. § 1226(a).  A noncitizen may request a bond hearing before an immigration judge, who may release the noncitizen upon finding that he "poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); 8 C.F.R. § 1236.1(c)(8).  For decades, noncitizens like Castro Sanchez who entered the United States and resided in the country prior to their removal proceedings were detained under this section of the INA.

Prior to Castro Sanchez's arrest, the Department of Homeland Security ("DHS") changed course and began detaining noncitizens under § 1225 of the INA, which applies to "applicant[s] for admission" to the United States.  8 U.S.C. § 1225(b)(2)(A).  Historically, this provision applied only to individuals actively seeking to enter the country at a border or port of entry—not individuals already residing in the United States.  *Kashranov v. Jamison*, 25cv5555, 2025 WL 3188399, at *6-7 (E.D. Pa. Nov. 14, 2025).  In July 2025, DHS issued a policy directing ICE agents to consider anyone who entered the United States without admission or inspection as an "applicant for admission" regardless of how long they have already been present in the country. *Salinas Jaigua v. Jamison*, 25cv7115, 2025 WL 3757076, at *2 (E.D. Pa. Dec. 29, 2025).

Individuals detained under this provision are subject to mandatory detention pending the disposition of their removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  They are generally not afforded an opportunity for a bond hearing and "may be released only 'for urgent humanitarian

reasons or significant public benefit.'" *Kashranov*, 2025 WL 3188399, at *1 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)).

The Board of Immigration Appeals ("BIA") subsequently issued a decision endorsing DHS's new interpretation of § 1225 and ruling that all noncitizens who entered the United States without admission or inspection, including those who have been residing in the United States without lawful status, are subject to mandatory detention without bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

**B.      Castro Sanchez's Petition & the Government's Response**

In April 2026, ICE detained Castro Sanchez under § 1225 pursuant to the application of this new policy. Castro Sanchez argues that § 1225 does not apply to him because he is not actively "seeking admission" to the United States. ECF No. 1 ¶¶ 21-28, 38-41. Rather, he entered without inspection and has been living in the United States. *Id.* ¶¶ 17, 39; ECF No. 4 at 4. He therefore contends that his detention is governed by § 1226, which confers the right to a bond hearing. ECF No. 1 ¶¶ 23-24. He also argues that his mandatory detention without the right to a bond hearing violates his constitutional due process rights.[2] *Id.* ¶¶ 29-32. Castro Sanchez asks the Court to declare his detention under § 1225 unlawful and order his immediate release. *Id.* at 15-17.

The Government raises two arguments in opposition to the Petition. First, that § 1225 of the INA applies to Castro Sanchez, not § 1226, and his mandatory detention is lawful under that provision. ECF No. 4 at 5-9. Second, that Castro Sanchez's detention without a bond hearing

---

[2]      Castro Sanchez's Petition also asserts that his continued detention violates the Administrative Procedure Act. *Id.* at ¶¶ 42-47. Because the Court concludes that Castro Sanchez is entitled to relief under the INA, it declines to reach this argument.

does not offend due process. *Id.* at 9-10. As courts in this District and across the country have repeatedly held in hundreds of recent cases, these arguments are unavailing.

## IV.    DISCUSSION

### A.    Section 1225 Does Not Apply to Castro Sanchez

The disposition of this case depends on whether § 1225 or § 1226 applies to noncitizens like Castro Sanchez, who have resided in the United States for years. The Court finds that § 1226—and not § 1225—applies here.

In resolving issues of statutory interpretation, the inquiry begins with the text, and "proceed[s] from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'" *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (quoting *BP America Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)). A "word must not be read in isolation but instead defined by reference to its statutory context." *U.S. v. Husmann*, 765 F.3d 169, 173 (3d Cir. 2014) (internal citations omitted).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings. 8 U.S.C. § 1225(b)(2)(A). By its terms, this section applies to a noncitizen who is both "an applicant for admission" and "seeking admission."

An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of

arrival . . .)[.]"  8 U.S.C. § 1225(a)(1).  The statute also defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).

The INA does not define the phrase "an alien seeking admission."  Courts in this District have construed this language to mean "*actively* trying to acquire or gain 'lawful entry . . . after inspection and authorization by an immigration officer.'"  *Kashranov*, 2025 WL 3188399, at *6 (internal quotations omitted).  The Court agrees with this interpretation of the statute for several reasons.

First, the plain text supports this reading.  The present participle "seek*ing*" connotes "ongoing and continuous action."  *Id.*  "Seeking admission" therefore means taking ongoing, affirmative steps to enter the United States, typically at a border or port of entry by presenting oneself for inspection and authorization.  *Id.*  Second, the statutory context of § 1225(a) confirms it governs "inspections and detentions" of noncitizens at the border.  *Id.* at *7.  As Judge Wolson has explained in detail, various provisions of § 1225(b) refer to "inspection" of noncitizens and the treatment of noncitizens "arriving from contiguous territory."  *Id.* (internal quotations omitted).  These references confirm that mandatory detention under § 1225(a) applies to individuals detained "at or immediately following border crossing."  *Id.*

Basic principles of statutory construction lend further support to this interpretation.  Congress used two distinct terms when drafting the INA— "seeking admission" and "applicant for admission."  If the Court were to accept the Government's position that these terms are interchangeable, one phrase would be rendered "entirely meaningless."  *Id.*  (citing *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) (explaining cannon against surplusage)).

The Government notes that divided panels of the Fifth and Eighth Circuits found the Government's interpretation of § 1225 to be correct. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026); *Avila v. Bondi, et al.*, --- F.4th ---, 2026 WL 819258, at *3 (8th Cir. Mar. 25, 2026).[3] The Fifth and Eighth Circuit opinions reasoned that the terms "applicant for admission" and "seeking admission" have the same meaning. *Id*. These opinions are not binding authority. Moreover, for the reasons stated above, the Court does not find the reasoning of these opinions persuasive.

Castro Sanchez is not taking active steps to obtain entry into the United States. He entered the United States at some unknown at least a year ago and has been living here ever since. ECF No. 1 ¶¶ 17, 39; ECF No. 4 at 4. Section 1225 therefore does not apply to him.

His detention is instead governed by § 1226 because he is a "[noncitizen] already present in the United States." *Jennings*, 583 U.S. at 303. Section 1226, titled "Apprehension and detention of aliens," provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States[.]" 8 U.S.C. § 1226(a). Except under very limited circumstances, noncitizens detained under this section are entitled to a bond hearing and an opportunity for release pending the outcome of immigration proceedings. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d). Because § 1226 applies, Castro Sanchez's mandatory detention under § 1225 is unlawful.

---

[3] The Government also candidly notes that a Seventh Circuit panel seemed inclined to rule against the Government's position and consistent with the majority of district courts to have considered the issue. *Castañon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1061-62 (7th Cir. 2025) (concluding upon review of application for stay of a preliminary injunction that the government was not likely to succeed on the merits of its argument for mandatory detention of applicants for admission present in the United States under § 1225(b)(2)(A)).

**B.      Due Process**

The Government next argues that Castro Sanchez's mandatory detention pending the resolution of his removal proceedings does not offend due process.  ECF No. 4 at 9-10.  The Court disagrees.

"It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."  *Demore*, 538 U.S. at 523 (internal quotations omitted).  To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, which weighs (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).

Each *Mathews* factor weighs in favor of Castro Sanchez.  First, he has a strong liberty interest in being free from mandatory detention.  Second, Castro Sanchez's detention under § 1225 poses a high risk of erroneously depriving him of his rights because he has not been afforded the opportunity for a neutral decisionmaker to make an individualized determination about whether he poses a flight risk or a danger to the community.  Third, a bond hearing poses a minimal administrative burden to the Government.  That minimal burden is clearly outweighed by Castro Sanchez's strong liberty interest and right to be heard.

## V.     CONCLUSION

Section 1226 applies to Castro Sanchez's detention because he is not actively seeking admission and has been living in the United States for at least a year.  Therefore, his continued detention under § 1225 is unlawful.  As a result, the Court will grant his Petition.

An appropriate Order follows.

BY THE COURT:

_____
MARY KAY COSTELLO, J.